NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JAN 19 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICHARD J. MEIER,<br><br>　　　　　Plaintiff-Appellant,<br><br>　v.<br><br>ALLIED INTERSTATE LLC, c/o CT Corporation System 818 W 7th Street, Suite 930 Los Angeles, CA 90017,<br><br>　　　　　Defendant-Appellee. | No.　20-55286<br><br>D.C. No.<br>3:18-cv-01562-GPC-BGS<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Submitted January 14, 2022[**]
Pasadena, California

Before:  RAWLINSON and WATFORD, Circuit Judges, and RAKOFF,[***] District Judge.

Richard Meier appeals from the district court's order granting summary

---

[*]　This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]　The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]　The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

judgment to Allied Interstate LLC (Allied) on his claims under the Telephone Consumer Protection Act (TCPA).  We affirm.

**1.**  Meier contends that the LiveVox Platform is an Automatic Telephone Dialing System (ATDS) under the TCPA.  47 U.S.C. § 227(a)(1).  While this appeal was pending, the Supreme Court held that an ATDS "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).  The LiveVox platform requires customers such as Allied to upload lists of telephone numbers.  It does not produce the numbers it dials using a random or sequential number generator.

Meier therefore must show that the platform stores telephone numbers using a random or sequential number generator.  He does not contend that the LiveVox system stores numbers using a *random* number generator.  Instead, he argues that the system stores telephone numbers using a *sequential* number generator because it uploads a customer's list of numbers and produces them to be dialed in the same order they were provided, *i.e.*, sequentially.

Under Meier's interpretation, virtually any system that stores a pre-produced list of telephone numbers would qualify as an ATDS (if it could also autodial the stored numbers, *see* 47 U.S.C. § 227(a)(1)(B)).  But this is precisely the outcome the Supreme Court rejected in *Duguid* when it overturned a decision by this court

holding that an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." 141 S. Ct. at 1168 (internal quotation marks omitted).

Meier relies on a footnote in the Court's opinion that endeavored to explain why Congress might have used both "produce" and "store" in the ATDS definition even though the phrase "produce telephone numbers to be called, using a random or sequential number generator" seemingly captures all of the autodialers Congress sought to regulate. *See id.* at 1172 n.7. Ultimately, the Court suggested that Congress may simply have taken a "belt and suspenders approach" to regulating autodialers. *Id.* This discussion was not central to the Court's analysis of the equipment at issue in *Duguid*, and it does not require us to adopt Meier's expansive interpretation. The LiveVox system does not qualify as an ATDS merely because it stores pre-produced lists of telephone numbers in the order in which they are uploaded. Meier's TCPA claims therefore fail.

**2.** Even if *Duguid* did not foreclose Meier's claims, the district court correctly concluded that the LiveVox HCI dialer is the relevant equipment and that the HCI Dialer does not have the capacity to automatically dial telephone numbers. Meier argues that the court must consider the entire LiveVox platform, which also includes an Automated dialer, because the HCI and Automated dialers both rely on the Campaign Database (to store telephone numbers) and the Automatic Call

Distributor (to route connected calls to LiveVox agents). However, the core functions of each dialer remain separate: The HCI dialer cannot function without a human agent clicking on phone numbers, and the Automated dialer excludes any human participation. The dialers operate on different server pools and use different queuers to send out calls. Moreover, as the district court noted, interpreting "equipment" to include distinct programs because they share a database or other component would drastically expand the sweep of the TCPA.

Meier also argues that the HCI dialer itself has the capacity to make automated calls because of the ease with which a LiveVox user can switch from the HCI dialer to the Automated dialer. But the user cannot simply flip a switch; he or she must stop the HCI campaign and initiate a new one in order to begin autodialing—a process that involves no fewer than five steps. And although Allied had access to both the HCI and the Automated dialers, there is no dispute that each of the calls to Meier's cell phone was made using the HCI dialer. The fact that LiveVox offers multiple dialers to its customers does not bring every call that LiveVox makes within the scope of the TCPA. The district court thus correctly concluded that the HCI dialer does not qualify as an ATDS.

**AFFIRMED.**